Case number 09-0796, in re Detention of Frank Jacobs. All right, counsel for appellant, step forward and introduce yourself. And before you do that, we all know the posture of this case. We issued a decision, and the Supreme Court directed us to vacate it. We vacated it. Supplemental briefs were filed in light of that decision or how to apply that hardened decision. And then most recently your side asked us to consider additional authority on the Fourth District case. And so we're going to – I think we're asking the parties to limit their argument to the issues raised in the supplemental briefs. Yes, Your Honor. Good morning, Your Honors. My name is Daniel Braun, and I represent the appellant for Adlie Lieberman in this case. I'm sorry, what's the spelling of your last name? E-R-A-U-N. And I'd like to reserve three minutes for rebuttal, please. As Your Honor mentioned, we are here to discuss Harden. In Harden, our Supreme Court found that in proceedings under the Sexually Violent Persons Commitment Act, the probable cause standard is whether or not there's a plausible account that the movement is no longer a sexually violent person and or not substantially likely to reoffend. In that case, the court continued. Isn't Harden, though, in a procedural posture different than this case? That was a probable cause to determine whether the person should be held over for a jury for a trial to decide whether they were sexually violent persons. Yes, Your Honor. That case was pre-commitment, and this is post-commitment. Okay. But like terms are to be interpreted alike. Yes. In this case, the legislature used probable cause in both sections of the statute. They gave no indication that they intended the probable cause to mean different things in different parts of the statute. In fact, Harden even looked beyond the Sexually Violent Persons Commitment Act and went all the way to criminal law to analogize for what the meaning of probable cause is. Well, let's talk about the hearing then. Your primary witness was Dr. Schmidt, true? Yes, we had Dr. Schmidt and Mr. Lieberman. All right. Mr. Lieberman didn't give an opinion about whether it was substantially probable that he would not reoffend, did he? I don't believe that he did, Your Honor. All right. It was Dr. Schmidt that gave an expert opinion. All right. Now, do you believe that the respondent in this case had the burden to establish that it was not substantially probable that he would reoffend? Not substantially probable he would reoffend. The language of the statute is a little... The statute, the language sometimes gets a little confusing. But in this case, yes, it was Mr. Lieberman's burden to show by a plausible account that he was not substantially likely to reoffend, and that was for conditional release. Yes. A discharge is whether or not he's no longer a sexually violent person. All right. Now, if he had the burden, let me ask you this. I think this is a critical question. Do you believe that Dr. Schmidt in any way ever opined that the respondent was not likely to reoffend? I think Dr. Schmidt, that was included in his opinion. And where was it? Just to give you some idea. I think that's kind of the heart of the matter here. Did the respondent through testimony of Dr. Schmidt ever really provide any testimony, anything, any plausible testimony that said, in my opinion, to a reasonable degree, scientific certainty, there is no substantial probability that Mr. Lieberman will reoffend? I don't think he used those exact words, Your Honor. All right. However, I do think that he rendered multiple opinions in this case which are probative of the final results. He said that paraphilia NOS doesn't exist under the DSM. That was his first opinion. Without that, Mr. Lieberman is not a sexually violent person under the statute. And without that, what? Are we going to keep going further and then saying, ergo, that it is not substantially probable that he will reoffend? Yes, Your Honor. It follows. All right. How do you get that? From what case law, what authority, what inference, how can you get to that point when the doctor doesn't give an opinion in regard to the issue? Well, he gave an opinion with regard to whether or not Mr. Lieberman suffers from a paraphilia at all. Yes. But he said he doesn't. Right. He mentioned that in the past 30 years, Mr. Lieberman has never acted out, at least with regards to a paraphilia, while in prison. I mean, are there really? Do you think there's a lot of individuals in prisons that are acting out that are in detention, that they're acting out? I mean, is that kind of really a realistic or even practical or plausible statement? Because, I mean, I don't know that there's any evidence in this record or any case that I've ever read of anyone acting out in prison or in the Department of whatever he was in, Human Services. Department of Corrections and now the Department of Human Services. Department of Human Services. Yes. Well, I don't think, I'm not really sure about whether or not there's a history of acting out for other people in the prison,  But didn't the doctors in this case say, though, that it's not unusual or, in their opinion, he didn't act out because he wasn't in his area of stimuli? Well, that was, Drs. Ostroff and Swearer said that. Yes. Dr. Schmidt disagreed with that. Disagreed with that. And said that at some point during the last 30 years, if he was really suffering from a severe paraphilia, he would have acted out in some way while in prison. But what did he base that on? He gave absolutely no foundation or basis for that statement, that he would have acted out. He just said that. He didn't base it on anything. He didn't base it on any study. He didn't base it on any treatise. He didn't base it on anything that would indicate that people act out who have paraphilia. Isn't it a little unfair to ask or to interpret the setting in such a way that supposedly explains the absence of acting out, when the setting itself prevents someone from acting out, presumably? I mean, that's the argument from the opposing doctors. And it seems a little unfair to say the only reason he didn't act out is because he's in this setting, and it suggests that he should stay in that setting from here on out, because we can never be sure whether he's going to act out if he's put in a different setting. I mean, that makes it impossible, absolutely impossible, ever to get to the point where the likelihood of re-violating or committing a new crime will ever be shown. Well, Your Honor, I think the point that you were getting to is really an issue that goes to the ultimate fact finder, not the judge sitting during a probable cause proceeding. The fact finder can weigh that evidence and determine what that actually means. But we have, in this case, an expert who is clearly qualified. Did the state kind of agree with that, or were they contesting that? Excuse me? Well, Dr. Schmidt had never treated any sexually violent offenders, had he? You said he was an expert, but he actually indicated that he had no, he was not familiar with any state statutes involving the commitment of sexually dangerous persons. He had not really treated any sexually dangerous persons who were committed. He had basically no experience, and he had not ever opined in a sexually dangerous person's hearing. Isn't that all correct? I believe so, Your Honor. And I think he has never opined during a sexually violent person's hearing. But he did say that he has evaluated rapists previously. He's just never evaluated anyone for purposes of a hearing. And beyond that, we still maintain that that's an issue that goes to credibility that ends up going to the fact finder. But in this case, if you look at Hardin, the Supreme Court said that the trial court didn't have to ignore blatant credibility problems. And in this case, didn't the judge say that he had a very serious issue with the credibility of Dr. Schmidt because he said that Dr. Schmidt opined that the only probable plausible account we'll ever get for all of the rapes that Mr. Lieberman committed was that a woman that he was trying to have intercourse with indicated to him that she did not want to have intercourse. And eventually, he was able to have intercourse with her. And so he came to believe that when women say no, they really mean yes. And that was why. That was his plausible account for why Mr. Lieberman committed all of the sexual assaults or rapes, actually, as it was at that time in the statute. Rape. Right. Excuse me. Dr. Schmidt gave that sort of opinion. Excuse me. Dr. Schmidt did render that opinion. And the judge did say, I believe his words were that part of the opinion was absurd. Yes. But that was his account. That was his opinion as to why he really didn't suffer from paraphilia. It was one of those bases. It was only part of his opinion. Okay. And the judge's finding regarding absurdity, which he can make a determination that there were blatant credibility problems. But in this case, he based that also in part on Dr. Schmidt's never having evaluated an SVP for purposes of a hearing, which goes to the fact finder. Well, why is that? Isn't the court capable of deciding whether a person is or is not really an expert for purposes of the testimony they're giving? Would that be something that a jury would decide? Or would the court first have to why do they have the experts declared an expert in a particular field? Before you answer that, was there an objection to Dr. Schmidt's qualifications to testify as an expert? And in the absence of one, isn't he presumed to be one? That's correct. There was no objection to his testifying as an expert. The judge admitted him as an expert. Why were the other two then, were you objecting to the other two then as being experts? I don't believe so. They were qualified by the judge, not Dr. Schmidt. Right. But in this case, we don't argue with qualifications because we think that's an issue for the fact finder. But the fact finder is. Well, is it really an issue for the fact finder? Couldn't the circuit court judge in this case have been presented by a motion from the state saying, in light of Dr. Schmidt's absence, because he's never evaluated a sexually violent person in the context of state law, that he's not qualified to give an opinion as to the risk of re-offending? And the circuit court judge could have said, I agree, and could have said this expert doesn't merit consideration. Well, with respect, there simply was no motion in this case. Therefore, he was admitted as an expert. Well, there was no objection either to having him, having the circuit court judge, consider Dr. Schmidt's testimony for whatever it was worth. I mean, he qualified. He was qualified to render his opinion. Then whatever he says amounts to probable cause, doesn't it? Well, what it means is that the only thing that was needed to be done was render a plausible account. All right. In fact, we have an expert rendering a plausible account, an expert that wrote the section of the DSM. It's not the question of whether or not Mr. Learman can ultimately succeed at a full trial on the merits. It's whether there is probable cause. And that's the other question. What do you think the Supreme Court really meant by that phrase that blatant questions, or clear questions of incredible testimony may be rejected by the trial judge during the course of a probable cause hearing? Did it mean that credibility, trial judge can dismiss testimony simply by saying I find this person incredible? Well, I think the trial judge has to do more than just use the word incredible. If you read, if you look at Hardin and Stanbridge together, both of which were looking at the same thing, basic credibility determinations and weighing of experts is beyond the scope of a judge's role to say not a probable cause determination. Speaking of Stanbridge, in that case, the hearing was based on two written reports. There was no live testimony. Does that make any difference here? I don't think so, Your Honor. In that case, all that was needed were the written reports. In this case, we went beyond written reports. In that case, and in the dissent in a case that the Stanbridge Court referred to, there was a doctor that testified, Dr. Witherspoon, I believe, and Dr. Witherspoon opined in both cases, gave an opinion in both cases, that it was not substantially probable that the petitioner or respondent in the case would reoffend. Do you recall that? Yes. So is there any difference here because we have, in Stanbridge, there was clearly an opinion by an expert to the standard that it was not substantially probable the person would reoffend? I don't think we have any difference in this case, and in part because we have the impeachment of both Dr. Swear and Dr. Ostrov. Hold it right there. I thought your position is that there's no weighing of the evidence, but here you're arguing that impeachment occurred of the state's experts, but that only comes into play if there's weighing of the evidence, isn't it? It only comes into play regarding whether or not the moving party has presented a plausible account, and part of the plausible account was the fact that both Dr. Swear and Dr. Ostrov said that they were basing this on 30-year-old data, said that they weren't sure whether or not he was ever going to reoffend. So part of the plausible account that was provided, it was through Dr. Schmidt. So the plausible account in your position is that plausibility can be impacted by the absence of evidence from the other side? Is that what you're saying? You're talking about impeaching the experts from the state, and I don't see why you'd even want to go there. Well, I'm saying in this case the admissions that the experts from the state made on cross-examination supported a finding of probable cause in this case, that they actually gave testimony which could be used in evidence. That was more than just impeachment. Did Dr. Schmidt also say that, I know he said that paraphilia, not otherwise specified, non-consent, is not a mental disorder in the DSM 3 and 4. It's not recognized. Right. He also said that Mr. Lieberman does not suffer from any paraphilia.  Is that correct? And he also said if he does, it has become, I don't know what words to use, if he does suffer from it, it's not. I believe he used the word remission. Yes. Or something to the effect that it has become, it's at the point where, what? What did he say? What did he finish it off with? I believe, and if I remember correctly, I think he said it was either in remission or gone. I thought he said that it was simply an average or everyday sexual drive that everybody has. Or at least he said he was evaluating Mr. Lieberman as he interviewed him today. Okay. So what I wanted to get to, Mr. Braun, is this. This Dr. Witherspoon, who testified in Stanbridge, he's testified in Kane, he's testified in other cases. He gave these specific opinions. In Stanbridge he said, the respondent should be discharged from IDHS custody and control based on, one, his low recidivism risk due to primarily his age. Two, increasing infirmity. This gentleman was, I think, getting either in the 70s, early 70s. He was 71. And abated, if not absent, sexually deviant interests and propensities. So the doctor, and that was just part of his opinion, but part of his opinion was that, indeed, under the Sexually Violent Persons Act, Mr. Stanbridge was no longer suffering from the, you know, his paraphilia or antisocial, whatever. There were multiple diagnoses, I believe. But what he said was that it makes it not substantially probable that Stanbridge will engage in acts of sexual violence. Now, I guess I'm going back to what I said earlier, and that is, where do we get from Dr. Schmidt, this plausible opinion telling the fact, telling the judge, it's my opinion that because he doesn't suffer from paraphilia, or that he never suffered from it, or that it's so in remission, or whatever, I don't want to misstate his testimony, that, in my opinion, he should be discharged from custody and control. Because he is no longer, it's no longer substantially probable that he will re-offend. Isn't that a key, a necessary ingredient for the judge to then say, I find that there's probable cause that it's not substantially probable he will re-offend, or he won't re-offend? Doesn't somebody have to tell the judge that it's their opinion, based on a number of factors, that the person won't re-offend, so that there's a reason to conduct the hearing? Well, I don't think he was asked that specific question. But why wasn't he? Also, I think that question is an ultimate question for the judge. It's the ultimate determination whether or not he's entitled to discharge or conditional release. Regardless of what an expert says on that question. Well, then why was Dr. Witherspoon giving that opinion? And why were the other experts? Why do all of the experts give that opinion? They basically said he shouldn't be released, because there's a substantial likelihood that he will re-offend. The doctors in this case did say that. The doctor in the Stanbridge case said that. The doctor in the Cain case said that. So, I mean, all I'm saying is, I think that there's something missing here. Not that it was necessarily... Well, Judge Porter thought it was implausible when he gave this account for the reasons that these sexual assaults occurred. But what's missing here is a plausible statement from the expert that he would tell the judge, it's not substantially probable that he will re-offend. Let him out. Give him a conditional discharge. Let him go out into society. But at least tell the judge that I am, Dr. Schmidt, I'm of the opinion that this person does not, it's not substantially probable that if he's released he's going to re-offend. You don't think he needs to say that? I don't think so, Your Honor. And I don't think, well, I don't know why Dr. Witherspoon made the decisions he made or what questions they decided to ask him and why in those cases. In this case, I think it follows from the fact that Dr. Schmidt said, Mr. Lieberman does not suffer from paraphilia. There is no such thing as paraphilia NOS non-consent. It follows from that that there is a plausible account that he's entitled to discharge or conditional release. And that's a question that the judge, or that's an answer the judge can, or a determination the judge can make based on the record we have. Do we have any Illinois decisions that suggest that Dr. Schmidt's opinion is certainly not in line with many of the psychiatrists that have testified in other sexually violent persons' cases where the courts, where the experts have said that they are of the opinion that paraphilia NOS non-consent is a mental disorder under DSM? I think I'm aware that there's a debate regarding that among experts. Yes. And I think that's a question that can go ultimately to the trier of fact in this case. Now that there's a disputed question. Let me ask you this. Is there anything in the statute, in the sexually violent person statute, that requires that the disorder be one listed in the DSM? Or any requirement of the statute? In the statute? Yes. No, Your Honor, but court cases have repeatedly referred to the DSM as being an important reference tool in these cases. Let me try to clarify a couple things. First, what's our standard of review of the court's decision? Probably in Hardin we argue that the standard of review is de novo. Okay. At least it's de novo. Because I originally thought you argued abusive discretion. That was our original argument. Then in Hardin it said that the probable cause determination is de novo. Okay. All right. Then the next question is, given that it's a probable cause hearing and you have to present evidence of what? What do you have to present evidence of? Probable cause of what? Don't you have to present a probable cause that the person will not likely reoffend? Yes. Okay. And if we were to find that Dr. Schmidt never gave an opinion on that exact question, if we find that Dr. Schmidt did not, then wouldn't that necessarily lead to the affirmance of the circuit court's decision? Well, Your Honor, with respect, I disagree. First, I think there is enough evidence in the record to make that final decision. Well, what evidence would that be? Where would that evidence come from? Would it come from Dr. Maybe it comes from Dr. Ostroff or I think it comes from It can come from anyone. Dr. Schmidt and his testimony regarding the paraphernalia and OS comes from Mr. Lieberman's 20 years in the eye doc and 15 evaluations. Well, we'll discuss that in your next one. We saved a few minutes for your rebuttal. But you can wrap up. Yeah. But before you do that, I get a vote, so I want to be able to get a question. Yes, sir. Okay. Would you agree that when he was initially placed in the mental facility, he was a repeat defender and a danger to the community at the beginning? I agree that he was convicted of multiple rapes and that Just answer my question, yes or no. I'm asking you whether this is a pair of glasses, not whether it's an elephant. Just answer my question, yes or no. I said I want to know. Yes, he was a repeat offender. No. And he was likely to reoffend at that point in time, was he not? I don't know. Okay. You don't know. But he was a repeat defender and the evidence would certainly show that he was likely to reoffend at that point in time. He's first placed at the facility. When he was first placed at the facility? Yes, that's what I'm talking about. I think the evidence would show that at our 2006 commitment possibly because that was what was found, but that's still going off of habeas, so we're still challenging that, so I don't know the answer. And is it also true that he refused psychiatric treatment? He did refuse psychiatric treatment. Okay. But he has to Well, wait, wait. I mean, I just want to see what you agree with and what you don't agree with. Okay. So now, as years have passed, you're saying that there has been a change without psychiatric treatment only because time has passed. That's the only evidence that you have. Time has passed makes it different. Is that right? Well, he's 30 years older. But that's what you're telling us. Time has passed. Now he's not going to be a repeat offender. But just so it's clear, the only question before us is whether or not there should have been an evidentiary hearing following the probable cause hearing. And all those other issues would be resolved in that context. All we're asking for here is the statutory release. Right. Okay. If it's reversed, it goes back down and there's a full hearing. He's not going to be walking out of court the day this opinion is issued. With that, I reserve time for rebuttal. Good morning, Your Honors. Mr. Braun, may it please the Court, my name is David Iskowich, I-S-K-O-W-I-C-H, and I'm with the Illinois Attorney General's Office on behalf of the appellee in this case. To answer one of the Court's questions about whether any other authority in Illinois exists regarding the diagnosis of paraphilia, NOS non-consent, in our brief in this Court in 2009, 2010, the last time we were here, my brief cited five cases in which experts had diagnosed this disorder in SBP detainees. Those cases are Sandry, Taylor, Stevens, Swanson, and Winterhaler, and those cases are in my brief filed in this Court. But there is, what Mr. Braun said is certainly true, that there's a dispute within the psychiatric community as to whether or not paraphilia non-NOS, not otherwise specified non-consent, whether that's a disorder listed in the DSM-3 and 4. True, Your Honor. There is a dispute. Absolutely. But both Drs. Swearer and Ostroff said that there's hardly anything in the field of psychology that's not going to be in dispute. It's a malleable science. We don't have to resolve that dispute, do we? We can simply rely on the testimony that comes forward, and if these reputable, if these individuals who have been qualified as experts, such as Dr. Ostroff, say that it's accepted by some, rejected by others, but it may be enough for us. Correct. And on that same point, Your Honor, I want to get back to the testimony of Dr. Schmitt, which the Court was concerned about at the beginning of my April opponents' hearing. Before you address his testimony, what reasonable belief are we looking for in the transcript to determine whether an evidentiary hearing should go forward? Whether there's a plausible account to believe that the petitioner is either entitled to discharge or conditional release. And to get to that second trial in this bifurcated system we've got, he has to show probable cause to believe for purposes of conditional release that he's not likely to reoffend. So we're looking for testimony from Dr. Schmitt? Correct. On that exact point? Correct. Was there testimony from Dr. Schmitt on that exact point? There wasn't, because his points were, A, there's no such thing as the disorder that the experts have diagnosed him with, and, B, all of his rapes can be explained by this no means yes theory, which, as the Court is aware, Judge Porter very candidly, upon the closing of the hearing, characterized as absolutely, totally, completely absurd. Does the fact that this was, now Hardin was the pre-commitment. This is post-commitment. Correct. Does it matter then that when the expert appears in front of Judge Porter that he, I mean, we've already had the one decision, although it's still apparently being contested, but does it matter then whether the expert tells the trial judge he's not likely to reoffend? Should Dr. Schmitt at least have said he doesn't suffer from paraphernalia, he never has, and, in my opinion, if he's conditionally released, he will not reoffend. He has to make that showing in order to get to a trial. Can you infer that from his testimony? If he never suffered from paraphernalia, does that mean, should we infer that he is not a sexually violent person, and therefore he, it's not likely, it's not substantially probable that he'll engage in future sexual acts? I suppose if he said there's. Let me stop you right there. Sure. Because how familiar are you with this entire history of this case? Are you familiar with the 2006 jury verdict? It's been about 10 years, Your Honor, since I've handled this case. In the 2006 jury proceeding, wasn't there a question for the jury to decide whether or not the defendant had a mental disorder? Correct. And that mental disorder would have been this exact paraphernalia. NOS. NOS. Okay. Right. And once that's, and the jury said yes, once that's decided, isn't that res judicata or doesn't that bar at least future hearings to dispute what was found by the jury? Well, that he has that condition now. Well, whether or not he has that condition now, Dr. Schmidt was saying he never had that condition, and that might have been reason enough for the trial judge to have disregarded his entire testimony because the jury found otherwise, and Dr. Schmidt is in no position to overrule the jury's finding that Mr. Schmidt has been described. That's true, Your Honor. And then Judge Porter's written, I believe it was written, actually it was his oral comments after the hearing, he said that he hasn't seen anything new here to believe that this disorder is somehow open to criticism, not open to criticism, but is not a viable or valid disorder with which to diagnose somebody and by which to order their commitment in the Department of Human Services. Well, once the jury's determined that he is likely to re-offend, do we need testimony then from an expert to tell us that he is not likely to re-offend? At the post? Yes. At this hearing, wasn't there a requirement, though, that someone, not Mr. Lieberman, he never said I'm not likely to re-offend, wasn't there a necessity that some expert testify, like in Stanford, that it is not likely that he will re-offend? Yes. Don't we need that? Yes. Yes, it's called for by the statute, actually. Section 55 actually obligates the trial court to appoint a paid expert. And that would go to Justice Gordon's point that Mr. Lieberman, I think at this point, has to demonstrate some sort of change in him to say, and supported by an expert who says at this point he is not likely to re-offend, the expert can't say he was never likely to re-offend because history says otherwise. We have the verdict for most cases. Absolutely. Now, I want to address Your Honor's question about the, I think you had mentioned the perceived unfairness of keeping these guys in. And I just want to address that. Before you address it, and I appreciate Your Honor addressing it, but let me clarify what I was trying to point out, that these individuals have all been convicted of crimes, they've all been sentenced, they've all completed their sentence, and now the state is seeking to keep them in custody. And it seems to me that the state should, or that the individual should be given the opportunity to demonstrate at an evidentiary hearing that he should no longer be kept in custody. And that should be the rule rather than the exception. And it shouldn't be an obstacle so large that it's insurmountable. Although in this case, in this case, I mean, this case presents us with a situation where we might be inclined to find such a large obstacle, given Mr. Lieberman's history. But at the same time, we can't simply write a decision for Mr. Lieberman alone. It would be a decision that would have to apply in every case. And we look at the case from the Fourth District where Stanbridge, where the decision seems absolutely right and very little needed to be presented. That's true, Your Honor. To get to that evidentiary hearing. And we question whether or not, what really, why wasn't enough evidence presented in this case? Because the test... I'm sorry, go back to your fairness. I didn't mean to interrupt you, Your Honor. No, no. The evidence wasn't sufficient in this case because of blatant credibility problems. And I get back to that term from Hardin. Has the term blatant credibility problems ever been defined in an Illinois case? I didn't find the term defined in any case. Well, do you really want us to decide on blatant credibility problems? Or do you want us to say that there was no testimony from the expert as to the likelihood of reoffending? And absent that testimony from an expert that says that the individual is unlikely to reoffend or is in the low range of recidivism, that an evidentiary hearing shouldn't go forward. I would be perfectly happy with the latter, Your Honor, but the former is just as good as far as the former. Well, the former presents problems, doesn't it? I mean, isn't that the unfairness that I was talking about? Can a trial judge, and we all understand having Mr. Lieberman in front of him, and we all know his history, and he's clearly, as Justice Gordon, I think, pointed out, this individual has brought upon himself, and deservedly so, a great deal of attention because he committed so many horrible crimes. But I don't know that we, as law, that we should say that a trial judge can, in a probable cause hearing, should simply be able to say credibility is enough, we're disregarding it, and we should affirm. Well, this case is somewhat unique, and it's the way the post-commitment statute is set up, unlike its counterpart at the pre-commitment stage, which we argue in our brief, is somewhat different as far as the amount of proof that can come in. Here we have a statute that expressly and explicitly allows any number of expert opinions to opine on the propriety of discharge or CR. The state gets an expert by its terms. The respondent gets an expert by its terms. My goodness, even the court gets its own expert by its terms. All of these come together. But that's one of the problems that I have with your position, and I understand you're trying to distinguish what you say pre-commitment and post-commitment, but as counsel pointed out, the same term is used, probable cause. Probable cause is in pre-commitment, and probable cause is in post-commitment. So pre-commitment, probable cause can't mean you only need a plausible explanation, there's no weighing of the evidence. It cannot mean probable cause in post-commitment that you can weigh the evidence and you can have different experts, and in light of the different experts, the trial judge can make those credibility determinations. It doesn't seem to make sense, and here's my bottom line. Yeah. Let's say this case went to an evidentiary hearing. Tell me what the difference would be between an evidentiary hearing down the line and this so-called probable cause hearing before Judge Bowers. What would be the difference? The respondent very well may believe that Dr. Schmidt wasn't the best guy to put up there. Oh, but hold it. But I'm saying that let's say he had Dr. Schmidt. I mean, are we talking about anything really different? Sure. The parties could decide to bring him over. If it's anew, but let's say Judge Porter had found probable cause. Wouldn't the evidence that was presented before him at the probable cause hearing be very likely the evidence that would have been presented before him at an evidentiary hearing? It could be, Your Honor. But even if the case standard or review at that second part of the bifurcated procedure is different, the state at that point bears the burden. I understand that. But I'm saying that it should be more likely, it should happen more often that evidentiary hearings should go forward. And when we are keeping an individual in custody well beyond the end term of his sentence, it seems to me that the state should be there proving its case. I understand, Your Honor. And in this case, the state did put on voluminous amounts of evidence in order to seal its case. And that's what strikes me as sort of strange because you could have done that at the evidentiary hearing and just gone forward and continued to build your case, which you have ample evidence for. That may be so, Your Honor. But for purposes of this case in particular, that wasn't going to happen based upon Dr. Schmitt's testimony, which again was found to be vastly underwhelming. What do you believe is the standard of review for us in this? I believe that after Hardin it's the manifest weight as far as factual findings, but then the ultimate question of probable cause is the no vote. But I don't think they said that at all. I don't think they gave that traditional standard of review that the courts use for probable cause to arrest. I don't believe there was. Okay. I could be wrong. They cited to a Wisconsin case, Watson v. State. Perhaps they paraphrased from Watson. Well, maybe it's in there. I don't know. My standard of review is on page 14. And you cite Hardin? I know that I did cite Hardin for the ultimate ruling on the existence of probable cause being the no vote. That's Hardin. Well, you know, in Stanbridge they debate what it is. They end up saying the State in that case said it was the no vote. There was some confusion for a while. There was an abuse of discretion. I'm sorry. In Stanbridge they were pointing out that the hearing was conducted based on no testimony, no live testimony. Correct. Simply two reports, and they said therefore it was a question of law. Right. That's perhaps slightly different when it's only on paper. But when there's live witnesses, Your Honors, that really does change the game a bit as far as the standard of review. And Judge Porter saw these folks testify. And it's really a cardinal rule of law, whether in a civil or criminal case, that when there's live testimony, the trial judge's job as a judge is to measure credibility. But that sounds like more of a hearing on the merits. But that's what the statute says, Your Honor. And that's what 55, 16, 65 call for, and that's our main point of distinction between those sections post-commitment and the Section 25 pre-commitment section. But you admit that probable cause is used in both sections. It's the same standard, Your Honor. The difference is what kind of proof the judge must assess, according to the terms of the statute. In the post-commitment, probable cause means the same, but the proceeding itself is going to be much more expansive. And it is going to be in a pre-commitment. Right. By the terms of the statute. Perhaps that's a legislative fix that might be in order. I don't know. But as of right now, witnesses are contemplated. Let me go back to the original point. Sure. If a probable cause hearing is so extensive in a post-commitment context, why do we need an evidentiary hearing? I mean, the evidentiary hearing is virtually that very same probable cause hearing that you've just described, a very extensive one with experts on both sides, credibility determinations, maybe factual findings. I mean, it doesn't seem to jive with the whole idea of a probable cause hearing, because probable cause hearing in a criminal case is called a preliminary. And, in fact, the Supreme Court referred to it. It's a preliminary hearing to find whether. And preliminary means just that, that the main event is still down the road. I understand your concern, Your Honor. I understand your, not confusion is the wrong word, your befuddlement over the way this works. All I can say is that the standard is different. I'm not sure that I'm befuddled by the statute. I might be befuddled by the position that you take. I didn't mean to use that word. No, I'm not taking offense. If the Court has no further questions, I have nothing else to add, and I rest on the remainder of my brief. Your Honor, thank you for your time this morning. Mr. Braun? Mr. Braun, why don't you address the question I had regarding the jury finding and whether or not Dr. Schmidt is in any position to call into question the jury finding that Mr. Lieberman suffered, at least in 2006, from a mental disorder, and Dr. Schmidt should not be heard to come into a courtroom and say he doesn't suffer from anything. Why shouldn't we take that position? Well, in this case, I think, first, the legislature made the decision that there's going to be a yearly review, and this review is new. Doesn't that yearly review go to Justice Gordon's point that something has transpired in that yearly review? The statute doesn't necessarily use that language. The statute says probable cause to believe that it's not substantially likely or probable cause to believe that he's no longer an SVP. Therefore, each time there's an annual review, and this is because each time there needs to be some justification to continue a civil commitment, which is extraordinary in our system. Generally, if someone is committed in any way, it's a criminal imprisonment, not a civil commitment. So this is an extraordinary case, and each year there's a new review. So it's not necessarily a collateral attack on the judgment. It's a review of that person, whether he should continue to be committed. But his foundation is what? The doctor's foundation is what? That he never suffered? The doctor's foundation, yes. But also that he doesn't suffer from it now. Regardless, he doesn't suffer from it now. Let me suggest that if he didn't suffer from it then, what is the likelihood that he would suffer from it now, given where he's been from then until now? Well, that's a determination, I think, for... But I'm suggesting that that argument doesn't make any sense. That Dr. Schmidt cannot be said... We cannot interpret Dr. Schmidt as saying he doesn't... You can't just look at narrowly that he's testifying that he doesn't... Mr. Lieberman doesn't suffer from this mental disorder now without taking into account that he also says that he never suffered from it at any point in his life. Well, in part, I think, existence of paraphilia in the West was not before the trial court in the 2006 proceeding. Moreover, this is a new expert, it's a new hearing, and all that needs to be done is probable cause. But the respondent has to. The respondent... And in Hardin, they point out the elements of what the state had to show in the pre-commitment. And the elements here are what you have to show. Correct. It's not substantially probable that he'll re-offend. Right. There's two parts. You requested both... Don't you think Dr. Schmidt had to tell us that, though? Like Dr. Witherspoon? Couldn't he... Wouldn't that have been meeting the threshold? Forgetting the plausible account. Meeting the threshold that Dr. Schmidt says, okay, I don't think he ever... I don't think paraphilia is a mental disorder, not otherwise specified in OS. Mr. Lieberman doesn't have it. But even if he does have it, it's become... It's in remission to such an extent that he is not likely to re-offend. Well, I think my response as before is that it does fall from the evidence. But also the fact is we requested either discharge or conditional release. The standard for discharge is whether or not he's still a sexually violent person. A sexually violent person is a person that has a mental disorder that makes them substantially likely to re-offend. So if there's no mental disorder... As Justice Garcia pointed out, are we not bound by the Supreme Court opinion where a jury had already determined at least that? I think because of the statutory scheme in which the legislature clearly envisioned a review every year, it's not binding on that review. You can't be suggesting that the legislature thought that in future hearings, the jury verdict finding a mental disorder could be disregarded. You're not suggesting that. I don't think it's a disregard of the jury verdict at all. I just think it's an expert opining on what his opinion is. The expert himself is not valid. Did Dr. Schmidt ever say that... Forget about he's not likely to re-offend. Did he ever say he's not a sexually dangerous person and he won't re-offend? Did he ever say that? Well, he said he doesn't have a mental disorder, which is a requirement. That's not what I'm asking you, Mr. Braun. I'm asking you, did Dr. Schmidt say he doesn't have a mental disorder, he's not likely to re-offend, he should be released immediately? He never used that language, Your Honor. Did he ever suggest that, though? Did he ever say that based on all my experience and all my work with Bob, whatever, that this is a guy that doesn't have a disorder, he's never had a disorder, he's not going to re-offend, he shouldn't be in the Department of Human Services? I think I have to give a compound answer to that. I think the first part was he did say he doesn't have a mental disorder. He never followed that up with I don't think he should ever be committed. He wasn't asked that question. But I think in this case, as the statute says, to be a sexually violent person you have to have a mental disorder. So he did render his expert opinion on what it means to be a sexually violent person. What all this sort of brings to mind now to me is that if the Supreme Court were to review this case, that perhaps there would be more to their decision about the evidentiary hearing that took place in this case, where the statute provides for multiple experts to be appointed. They were appointed in this case. They all gave testimony. They all gave opinions. And the court was then reviewing a posture that was completely different than Hardin. Completely different. There had been no jury in Hardin to determine that he was a sexually dangerous person. The issue was whether or not there was probable cause for that hearing. Here we have a posture where it's already been determined at some point by a jury that he suffered from a mental disorder and that he was likely to engage in acts of sexual violence. That's the only way he could be detained. And I mean, I don't think there's any problem with the statute that it allows for a yearly review. But let Dr. Witherspoon, let the doctor come in and say, or Dr. Schmidt, tell the judge that it's not, there's no probable cause to believe he will, you know, re-offend. Or, taking it further, he's never been a sexually violent person and there's no likelihood that he will re-offend. Well, I think you are correct. It's post-commitment instead of pre-commitment. And there's been different proceedings. However, there's nothing in the statute that necessitates additional experts at post-commitment. It's actually people, the BOTRUF in Illinois Supreme Court case, how it's discretionary whether the court will even appoint an expert in that case. But I don't think that that's necessary to reach that question here. Right. I mean, it's the exact same term. It's probable cause. Yes. And the burden has shifted. Yeah, I think that it should be the same. I mean, the meaning has definitely, the meaning of it has, is the same. Right. So your specific question would be regarding the testimony from the expert, whether or not he actually says this person is no longer a sexually violent person and is not going to re-offend. And I think in that case, what we need for the standard is what we have here. We have, certainly have enough. We have the doctor saying he does not have a mental disorder. At the very least, he does not have a mental disorder now. And that's enough to get the statutory entitled right to the full probable cause hearing, which won't necessarily go to the same judge because for discharge, the committee may elect a jury. So it might go to a jury instead of the judge. Sure. And if there are no further questions. No. Thank you very much. The case will be taken under advisement. Thank you.